IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION



| | |
|---|---|
| PATRICIA A. BROWN, an individual, | |
| Plaintiff, | Civil Action No. 2:10 cv 1012 |
| vs. | Judge JUDGE SARGUS |
| J.C. PENNEY CORPORATION, INC., a Delaware corporation, | Magistrate Judge MAGISTRATE JUDGE KEMP |
| and | |
| RICHARD SMITH, an individual, | |
| Defendants. | |

## COMPLAINT FOR MONEY DAMAGES AND INJUNCTIVE AND OTHER RELIEF

### WITH JURY DEMAND

NOW COMES PLAINTIFF PATRICIA A. SMITH, by and through her undersigned counsel, and makes the following claims against DEFENDANTS J.C. PENNEY CORPORATION and RICHARD SMITH.

### Introduction

1. The following claim arises from Plaintiff's employment with Defendants and Defendants' unlawful conduct toward and treatment of Plaintiff on the basis of her age and disability/record of impairment.

### The Parties

2. Plaintiff Patricia A. Brown ("Plaintiff" or "Brown"), is a living person who resides at 4370 Maple Grove Drive, Grove City, Franklin County, Ohio 43123, and whose date of birth is August 9, 1950.

3. Defendant J.C. Penny Corporation, Inc. ("Defendant JCP" or "JCP"), is a Delaware corporation that has conducted business, and at all times relevant hereto employed Plaintiff at, 5085 Tuttle Crossing Boulevard, Tuttle Crossing Mall, Dublin, Franklin County, Ohio 43016. Upon information and belief, Defendant JCP's principal place of business is located in Plano, Texas. At all times relevant hereto, JCP has employed four or more persons within the state of Ohio, including Plaintiff.

4. Defendant Richard Smith ("Defendant Smith" or "Smith"), is a living person who resides in Ohio and, at all times relevant hereto, was employed with JCP as the Store Manager of the JCP store located at 5085 Tuttle Crossing Boulevard, Tuttle Crossing Mall, Dublin, Franklin County, Ohio 43016. At all times relevant hereto, Smith has acted directly or indirectly in the interest of JCP in regard to Plaintiff's employment with JCP.

5. At all times relevant hereto:

(A) Plaintiff was an "employee" of Defendant JCP as the term is defined by 29 U.S.C. §203(e) and 42 U.S.C. §12111(4);

(B) Plaintiff was an "employee" of both Defendant JCP and Defendant Smith as the term is defined by Ohio Revised Code ("O.R.C.") §4112.01(A)(3);

(C) Defendant JCP was an "employer" of Plaintiff as the term is defined by O.R.C. §4112.01(A)(2), 29 U.S.C. §203(d), and 42 U.S.C. §12111(5); and

(D) Defendant Smith was an "employer" of Plaintiff, as "employer" is defined by O.R.C. §4112.01(A)(2).

(E) Defendant JCP was a "covered entity" as the term is defined in 42 U.S.C. §12111(2).

2

## Jurisdiction and Venue

6. Upon information and belief, this Court has original jurisdiction over the parties pursuant to 28 U.S.C. §1331. The Court has federal question jurisdiction over Plaintiff's claims, which are brought pursuant to the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §201, *et seq.*, and the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. §12111, *et seq.* This Court also has supplemental jurisdiction over Plaintiff's claims under the laws of the state of Ohio pursuant to 28 U.S.C. §1367.

7. Venue is proper in this Court because Plaintiff was employed by Defendants within the Southern District of Ohio, Eastern Division, and because all or a substantial part of the events giving rise to the claims herein occurred within the Southern District of Ohio, Eastern Division.

8. Plaintiff has fulfilled the jurisdictional prerequisites set forth at 29 U.S.C. §§626(d), 626(d)(2) and 633(b) by: (1) filing a charge of age and disability discrimination with the Equal Employment Opportunities Commission ("EEOC") on or about May 4, 2010, which was within 300 days of the date of the last acts of discrimination by Defendant JCP; (2) obtaining a Notice of Right to Sue from the EEOC dated August 13, 2010; and (3) and filing this Complaint within 90 days of her receipt the Notice of Right to Sue.

## Plaintiff's Claims

9. Plaintiff has been continuously employed with JCP between October 2001 and the present date, and has worked as a "Salon Specialist" since about November 2003.

10. As a Salon Specialist, Plaintiff's duties have included the following: general customer service, scheduling customers' hair appointments, greeting customers, cashiering duties, answering the telephones, taking telephone messages, stocking the retail shelves and display cases with hair care products, organizing the stock room, creating planagrams for the

display of merchandise, entering customer information into the computer system, handling new customer protocol, preparing cleaning and straightening the retail shelves and display cases, and assisting customers with their purchases of various hair care products.

11. In 2009, working as a Salon Specialist working at the Tuttle Mall Salon, Plaintiff was regularly scheduled to work and did work between 35 and 38 hours each week and typically was not scheduled to work on Mondays.

12. In November 2009, Plaintiff consulted with her physician about a lump she had discovered in her breast.

13. On December 8, 2009, Plaintiff's physician conducted a surgical lumpectomy to remove the lump in Plaintiff's breast. A biopsy was conducted on a tissue sample obtained from Plaintiff during this surgery. Plaintiff requested and received from the Company a one-week leave of absence for this surgery and her recovery from it.

14. On December 10, 2009, Plaintiff learned from her physician that the biopsy revealed she had cancer.

15. On or about December 11, 2009, Plaintiff telephoned her immediate supervisor at JCP, Salon Manager Tina Wicker, and JCP's Director of Human Resources at its Tuttle Mall location, Linda Shell, and informed both of them that Plaintiff had been diagnosed with breast cancer. Plaintiff also discussed with Wicker and Shell her need for a two-month medical leave of absence for the time she would miss work for additional surgery that was necessary, and her subsequent recovery and treatment.

16. As of December 11, 2009, Defendants had constructive and/or actual notice that Plaintiff had a "disability" as defined in 42 U.S.C. §12102(1), an impairment of a "major life activity" as defined in 42 U.S.C. §12102(2), and was "regarded as having an impairment" as

4

defined in 42 U.S.C. §12102(3).

17. Plaintiff worked the week of December 14, 2009.

18. Beginning the week of December 21, 2009, Plaintiff took a leave of absence while she underwent surgery and chemotherapy to treat her breast cancer.

19. Plaintiff's physician released her to return to work on February 22, 2010.

20. During Plaintiff's leave of absence, JCP hired Rachel Pena to work some or all of Plaintiff's former weekly work schedule. Upon information and belief, Pena was about 20 years old when she was hired by JCP.

21. In anticipation of her return to work, Plaintiff scheduled a face-to-face meeting with Wicker and Smith on February 15, 2010.

22. During Plaintiff's February 15, 2010 face-to-face meeting with Wicker and Smith:

(A) Plaintiff provided them with her physician's written release for Plaintiff to return to work effective February 22, 2010;

(B) Plaintiff informed Wicker and Smith that she wished to return to work as soon as her physician indicated she could do so, which was February 22, 2010;

(C) Smith asked Plaintiff if she was ready to return to work, and Plaintiff told Smith that she was ready to return and give him 100%, but that she could not yet give her usual 120%, to which Smith replied this was because of Plaintiff's "age"; and

(D) Smith informed Plaintiff that she would no longer be scheduled to work for 35-38 hours each week as she had always been in the past, and that her hours were being reduced due to "cut-backs."

23. Defendants unlawfully failed and refused to allow Plaintiff to work hours of work when she was available and able to work, and when Defendants had work for her to perform,

5

because of her disability, because she was regarded as having an impairment and/or because of her record of impairment.

24. When Plaintiff returned to work during the week of February 22, 2010, she was scheduled to work only 12 hours that week. After Plaintiff returned to work, Pena continued to work many of the scheduled hours that Plaintiff had worked before her leave of absence.

25. During the week of February 22, 2010, Wicker informed Plaintiff that Smith would not permit Plaintiff to work during any week in which she received a chemotherapy treatment, even though Plaintiff had scheduled her chemotherapy treatments for Mondays, a day she typically was not scheduled to work. Plaintiff advised Wicker that she was fully capable of working on days when she did not have a chemotherapy treatment, that her physician did not restrict her work on the days that preceded or followed her chemotherapy treatments, and that she very much desired to work on any day that she did not have a chemotherapy treatment scheduled. However, Wicker did not schedule Plaintiff to work any hours during the weeks of March 8, 2010, and March 29, 2010, because Plaintiff received chemotherapy treatments on the Mondays of those weeks. As a result, Plaintiff did not work or receive any wages or commissions on the sale of merchandise for either week.

26. After Plaintiff returned to work from her leave of absence for cancer surgery, recovery and treatment between December 21, 2009 and February 21, 2010, Pena continued to be scheduled to work and worked about twice as many hours as Plaintiff was scheduled to work and worked.

27. After Plaintiff returned to work from her leave of absence for cancer surgery, recovery and treatment between December 21, 2009 and February 21, 2010, Pena and another Salon Specialist, Gwen Whatley, have been assigned more hours of work and more favorable work

schedules than has Plaintiff. Upon information and belief, Whatley is about 45 years old.

28. Upon information and belief, nether Pena nor Whatley has had cancer, cancer surgery, chemotherapy treatment or any other serious health condition, major illness, disability or record of impairment.

29. On multiple occasions since returning to work on February 22, 2010, Plaintiff complained to Defendants about being scheduled fewer hours of work than Pena and Whatley, and about being assigned hours of work that are less desirable because the opportunity to earn commissions on the sale of salon merchandise typically is less favorable. However Defendants did not take any corrective action.

30. On or about May 4, 2010, Plaintiff filed a charge of discrimination with the EEOC against JCP, alleging employment discrimination on the basis of her age and disability. On that same date, Plaintiff's delivered a letter to Smith that contained a copy of my EEOC charge. Therefore, as of May 4, 2010, both Defendants had actual notice that Plaintiff had made a formal complaint to the EEOC of age and disability discrimination in employment against JCP.

31. After Defendants had notice that Plaintiff filed her EEOC charge alleging age and disability discrimination, Defendants retaliated against Plaintiff by further reducing Plaintiff's hours of work, assigning her even less desirable work schedules, and revoking a special employee discount Plaintiff had previously earned while working for Defendants

32. At all times relevant hereto, to perform all of her duties as a Salon Specialist and Plaintiff's work performance for Defendants reasonably and objectively satisfactory.

33. At all times relevant hereto, Defendants had actual knowledge of Plaintiff's age and the ages of Pena and Whatley.

34. Defendants maliciously, intentionally and unlawfully discriminated against Plaintiff

7

because of her age.

35. Defendants maliciously, intentionally and unlawfully discriminated against Plaintiff because of her disability and/or record of impairment.

## COUNT 1

### (Age Discrimination in Employment in Violation of Ohio Revised Code §4112.99)

36. Plaintiff incorporates by reference the foregoing paragraphs of the Complaint, as if fully rewritten herein.

37. Plaintiff's age was a determining factor in Defendants' assignment of Plaintiff's work schedule and hours of work, and revocation of Plaintiff's employee discount.

38. Defendants unlawfully discriminated against Plaintiff on the basis of her age.

39. Defendants violated O.R.C. §4112.99 of the Ohio Revised Code, which prohibits employment discrimination on account of an employee's age.

40. As a direct and proximate result of Defendants' unlawful employment discrimination on the basis of age, Defendants have proximately caused Plaintiff to suffer damages in the form of lost wages, commissions and other benefits and to suffer personal humiliation, anguish, anxiety, inconvenience and reduced enjoyment of life.

## COUNT 2

### (Age Discrimination in Employment in Violation of 29 U.S.C. §621, *et seq.*)

41. Plaintiff incorporates by reference the foregoing paragraphs of the Complaint, as if fully rewritten herein.

42. JCP intentionally, knowingly and willfully discriminated against Plaintiff on the basis of her age.

8

43. JCP intentionally, knowingly and willfully violated the Age Discrimination in Employment Act 1967, *as amended*, 29 U.S.C. §621, *et seq*.

44. As a direct and proximate result of JCP's unlawful employment discrimination on the basis of age, JCP have proximately caused Plaintiff to suffer damages in the form of lost wages, commissions and other benefits and to suffer personal humiliation, anguish, anxiety, inconvenience and reduced enjoyment of life.

## COUNT 3

### (Disability Discrimination in Employment in Violation of Ohio Revised Code §4112.99)

45. Plaintiff incorporates by reference the foregoing paragraphs of the Complaint, as if fully rewritten herein.

46. Plaintiff's disability and/or record of impairment was a determining factor in Defendants' assignment of Plaintiff's work schedule and hours of work, and revocation of Plaintiff's employee discount.

47. Defendants unlawfully discriminated against Plaintiff on the basis of her disability and/or record of impairment.

48. Defendants violated O.R.C. §4112.99 of the Ohio Revised Code, which prohibits employment discrimination on account of an employee's disability and/or record of impairment.

49. As a direct and proximate result of Defendants' unlawful employment discrimination on the basis of disability and/or record of impairment, Defendants have proximately caused Plaintiff to suffer damages in the form of lost wages, commissions and other benefits and to suffer personal humiliation, anguish, anxiety, inconvenience and reduced enjoyment of life.

## COUNT 4

### (Disability Discrimination in Employment in Violation

of 42 U.S.C. §12111, *et seq.* and 42 U.S.C. §2000e, *et seq.*)

50. Plaintiff incorporates by reference the foregoing paragraphs of the Complaint, as if fully rewritten herein.

51. JCP intentionally, knowingly and willfully discriminated against Plaintiff on the basis of her disability and/or record of impairment.

52. JCP intentionally, knowingly and willfully violated the Americans with Disabilities Act of 1990, *as amended*, 42 U.S.C. §12111, *et seq.*, including Sections 12112(a) and (b).

53. JCP has engaged in intentional discrimination and has done so with malice or reckless indifference to Plaintiff's federally-protected rights.

54. As a direct and proximate result of JCP's unlawful employment discrimination on the basis of disability and/or record of impairment, JCP has proximately caused Plaintiff to suffer damages in the form of lost wages, commissions and other benefits and to suffer personal humiliation, anguish, anxiety, inconvenience and reduced enjoyment of life.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby prays for the following relief on her foregoing claims:

A. Back pay, lost wages and commissions;

B. Reinstatement of her previous hours of work and work schedule;

C. Compensatory damages in an appropriate amount to be proven at trial, which Plaintiff reasonably believes will exceed $75,000;

D. Liquidated damages pursuant to 29 U.S.C. §626(b);

E. Punitive damages in an appropriate amount to be proven at trial, which Plaintiff reasonably believes will exceed $75,000;

F. An Order enjoining Defendants from engaging in further acts of unlawful

employment discrimination against Plaintiff;

G. Pre- and post-judgment interest on all such foregoing damages proven;

H. Reasonable attorneys' fees and costs, as allowed pursuant to law; and

I. All such other relief, legal and equitable, as permitted by law.

Respectfully submitted,

/s/ John W. Ferron
John W. Ferron (0024532)
jferron@ferronlaw.com
FERRON & ASSOCIATES
A Legal Professional Association
580 North Fourth Street, Suite 450
Columbus, Ohio 43215-2125
(614) 228-5225, 228-3255 fax

Trial Attorney for Plaintiff,
Patricia A. Brown

## JURY DEMAND

Plaintiff hereby demands a trial by a jury as to all of her claims.

/s/ John W. Ferron
John W. Ferron (0024532)